## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF ALABAMA

In re                                                       Case No. 09-10462-DHW
                                                                           Chapter 13

BRIANA L. CRITTENDEN,

       Debtor.

## MEMORANDUM OPINION

Donald Hicks filed an objection to confirmation of Briana L. Crittenden's chapter 13 plan. Hicks maintains that Crittenden filed neither the petition nor the plan in good faith as required by 11 U.S.C. § 1325(a)(3) and (7).

The objection to confirmation was considered at an evidentiary hearing on July 15, 2009. Representing Crittenden at the hearing was her attorney, Michael D. Brock. Hicks was represented by his counsel, Russell N. Parrish.

For the following reasons, the court concludes that the objection to confirmation should be overruled.

### Jurisdiction

The court's jurisdiction over this dispute is derived from 28 U.S.C. § 1334 and from an order of the United States District Court for this district wherein that court's jurisdiction in title 11 matters was referred to the Bankruptcy Court. *See* General Order of Reference of Bankruptcy Matters (M.D. Ala. Apr. 25, 1985). Further, because plan confirmation is at issue here, this court's jurisdiction is extended to the entry of a final order or judgment pursuant to 28 U.S.C. § 157(b)(2)(L).

### Factual Findings

Hicks is a used car dealer operating under the trade name of Sportsman Truck and Marine. Most of the cars sold by Hicks are valued between $5,000 and $10,000, and Hicks provides financing to buyers in approximately 90% of his sales.

Crittenden works for a Georgiana, Alabama medical facility which is about a 45-minute, one-way drive from her home. In early 2009, she was interested in buying another vehicle due to the age of her then car, a 1986 Chevrolet Caprice, and the lengthy driving distance to her work. Further, Crittenden's former car provided an uncomfortable commute in the summertime because it was not air-conditioned.

On January 30, 2009, Hicks sold to Crittenden and her life partner, Adrianna Pierson, a 2005 Nissan Altima. *See* Ex. A, Sale Contract. The sales price for the vehicle was $14,569.59, including tax and fees. The parties agreed that Crittenden would make a $3,500 down payment and that Hicks would finance the balance of $11,069.69. *See* Ex. D-1, Bill of Sale.

Crittenden could not make the full $3,500 down payment on January 30, 2009. She did, however, have $1,500 from her 2009 tax refund, and she paid that sum to Hicks on the date of the sale. *See* Exhibit B, Receipt dated January 30, 2009. Hicks and Crittenden agreed that the remaining balance of the down payment, $2,000, would be paid by February 20, 2009, and Crittenden was given immediate possession of the car.

Hicks testified that he understood that Crittenden would pay the remainder from her own tax refund, but Crittenden testified that the $2,000 was to be paid from the state tax refund due to Adrianna Pierson and that Hicks knew that to be the source of those funds. In connection with the transaction, Hicks did not check Crittenden's credit record, nor did he know that the co-buyer, Pierson, was in bankruptcy.

Between the vehicle purchase date and the date that the remainder of the down payment was due, Adrianna Pierson's tax return was placed under review by the Alabama Department of Revenue. *See* Exhibit D-2, Letter from State of Alabama Department of Revenue to Pierson dated February 12, 2009. The Department of Revenue advised Pierson that additional information was needed in order to process her return and set March 14, 2009, as the date by which the information should be supplied. In its letter, the Department of Revenue did not give any indication of when the tax return would ultimately be processed or when any refund due would be paid. Indeed, as of the date of the hearing, Pierson still had not received a state tax refund.

On February 20, 2009, the date that the remainder of the down payment was due, Crittenden visited Hicks's place of business and informed him that, due to the tax refund being held up, she could not pay the $2,000. Before leaving his business, Crittenden, with some misgivings, gave Hicks a $2,000 check which she post-dated to March 6, 2009. *See* Exhibit C, Crittenden's check #1003. Crittenden was concerned about giving the check to Hicks but feared that Hicks would repossess the car if she did not. On the same day, but by separate check, Crittenden paid Hicks the $400.19 February installment payment.

As of February 20, 2009, the date that Crittenden gave Hicks the $2,000 check, she had not seen any attorney regarding filing for bankruptcy relief. Sometime thereafter, she did seek the advice of her bankruptcy counsel because she was being sued by another creditor, Pay-Day Loans, and her wages were about to be garnished. She testified that with a wage of only $8.60 an hour and having one minor child, her income was not enough to meet basic living expenses if subjected to a garnishment. In addition, Crittenden testified that she sought advice from her bankruptcy lawyer because, after purchasing the vehicle from Hicks, she contracted a communicable blood infection which forced her to leave work for about two weeks. This loss of income further worsened her financial situation.

On March 6, 2009, Crittenden filed this chapter 13 bankruptcy petition. Hicks presented Crittenden's $2,000 check to the bank, but it was dishonored for insufficient funds on March 12, 2009.

Crittenden's chapter 13 plan provides that the claim of Hicks be paid in full. The plan alters the contract in just two ways. First, interest is provided on the claim at the rate of 4.25 percent rather that the contract rate of 18%. Second, the monthly payments to Hicks under the plan are fixed at $315 rather than the $400.19 per month payment under the contract.

### Legal Conclusions

This court must confirm the debtor's plan if it finds, *inter alia*, that "the plan has been proposed in good faith and not by any means forbidden by law."

3

11 U.S.C. § 1325(a)(3). Further, the court must confirm the plan if it finds that "the action of the debtor in filing the petition was in good faith." 11 U.S.C. § 1325(a)(7).

In an objection to confirmation for lack of good faith, the burden of proof is allocated between the objecting party and the debtor. The objecting party bears "the initial burden of articulating a clear and cognizable objection." *In re Fricker*, 116 B.R. 431, 438 (Bankr. E.D. Pa. 1990). The debtor, however, bears the ultimate burden of persuasion that the requirements for confirmation are satisfied. *Id.*; *In re Crawford*, 2008 WL 2783461, *2 (Bankr. M.D. Ala. July 16, 2008); *Lincoln v. Cherry Creek Homeowners Ass'n (In re Lincoln)*, 30 B.R. 905, 909 (Bankr. D. Col. 1983) (holding that the debtor, as the plan proponent, has the burden of establishing the confirmation criteria enumerated in § 1325(a)); *In re Lindsey*, 122 B.R. 157, 159 (Bankr. M.D. Fla. 1991).

The Court of Appeals for this circuit considered the good faith requirement of § 1325(a)(3) in *Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir. 1983). The court held that good faith, which defies comprehensive definition, is determined based on the totality of the circumstances in each case: has there "been an abuse of the provisions, purpose or spirit" of the relief provided by chapter 13? *Kitchens*, 702 F.2d at 888. The court went on to enumerate a non-exhaustive list of factors which a bankruptcy court must consider in determining whether the statutory requirement of good faith is met.[1]

---

[1] When considering whether a chapter 13 plan has been proposed in good faith, a bankruptcy court must consider the following factors: (1) amount of the debtor's income from all sources; (2) living expenses of debtor and his dependents; (3) amount of attorney fees; (4) probable or expected duration of debtor's chapter 13 plan; (5) motivations of debtor and his sincerity in seeking relief under the provisions of chapter 13; (6) debtor's degree of effort; (7) debtor's ability to earn and likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) frequency with which debtor has sought relief under Bankruptcy Reform Act and its predecessors; (10) circumstances under which the debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors; and (11) burden which plan's administration would place on trustee. In addition, the court may consider the type of the debts to be discharged and whether such debts would be nondischargeable under Chapter 7, and accuracy of plan's statements of debts and

4

The debtor's good faith is often put at issue when she incurs a debt on the eve of bankruptcy. Recently incurred debts bring into question the debtor's *bona fides*, or lack thereof, in dealing with the creditor. Further, these last-minute debts call into question whether the debtor really intended to perform under the contract at the time it was made, thus raising the issues of promissory fraud and the dischargeability of the debt in a hypothetical chapter 7 case.[2]

In the view of the undersigned, the evidence establishes that the debtor intended to perform under the contract at the time of its making. Thus, this is not a case of promissory fraud which would lead to the nondischargeability of this debt in a hypothetical chapter 7 case. Not only did Crittenden make a $1,500 down payment (over 10% of the vehicle purchase price) on the date of the sale, but she later paid Hicks $400.19 representing the February installment. It is unlikely that a debtor would make these sizeable payments if she lacked intent to perform under the contract from its inception.

Further, Crittenden's failure to pay the balance of the down payment was attributable to factors beyond her control. Clearly, on January 30, 2009, the date of the sale, Crittenden was unaware that Pierson's tax refund would be delayed.[3] The evidence establishes that Crittenden was relying on Pierson's tax refund as the source for the remainder of the down payment. Later, on February 20, 2009, the due date for payment of the $2,000, Crittenden voluntarily visited Hicks at his place of business and advised Hicks of her inability to pay. Her willingness to discuss with Hicks her dilemma, rather than to avoid him altogether, weighs on the side of Crittenden's good faith.

What does not weigh in Crittenden's favor in the consideration of her good faith is that on February 20, 2009 she gave Hicks a post-dated check for the balance of the down payment with the knowledge that her friend's tax return

---

expenses and whether any inaccuracies are an attempt to mislead the court. *See Kitchens*, 702 F.2d at 888-89.

[2] 11 U.S.C. § 523(a)(2) excepts debts obtained by fraud from discharge in chapter 7 cases.

[3] The State of Alabama's letter to Adrianna Pierson regarding the need for additional information prior to processing her return was dated February 12, 2009.

5

was under review and that the refund was being held up. It is only reasonable to conclude that on February 20, 2009, Crittenden knew that her $2,000 post-dated check would likely be dishonored when presented. There is no indication that Crittenden had reason to believe that Pierson's tax return would be processed and a refund made in time to cover the post-dated check once it was presented or that she would have that amount available from another source.

The *Kitchens* factors are, however, not exhaustive. Indeed, the *Kitchens* court noted that:

> The Eighth Circuit court amplified the tenth factor, stating that the bankruptcy court should consider the extent to which claims are modified and the extent of preferential treatment among classes of creditors.

*Id.* at 889. In this case, Crittenden's plan does not significantly modify Hicks's contractual rights in that the plan provides for the payment of his principal claim in full. The only modification of the contract concerns the interest rate (4.25% under the plan as compared to 18% under the contract) and the amount of the monthly payments ($315 per month under the plan compared to $400.19 per month under the contract).

In addition, Crittenden's plan does not prevent Hicks from collecting the interest differential between the plan and the contract. As stated, Adrianna Pierson was a co-buyer under the contract with Crittenden. The Bankruptcy Code, at § 1301, requires the court to lift the stay with respect to the co-debtor on a consumer debt to the extent that the plan does not pay the claim in full. Therefore, Hicks has a remedy to fully collect his claim under the contract by seeking relief from the co-debtor stay to collect the unpaid interest from Pierson.[4] Should he do so, his contractual rights are virtually unaffected by Crittenden's bankruptcy.

---

[4] The court notes that while Pierson has a separate bankruptcy case of her own, 08-11102, she obligated herself on the note to Hicks after she filed her bankruptcy in July 2008. Hence, Pierson's liability to Hicks arises post petition and cannot be made a part of her chapter 13 case for her failure to comply with 11 U.S.C. § 1305 relating to allowance of post-petition claims.

6

## Conclusion

In consideration of the totality of these circumstances, the court finds that the petition and the chapter 13 plan were filed in good faith. By separate orders, the objection to confirmation of Crittenden's plan filed by Hicks will be overruled and the plan confirmed.

Done this 6th day of August, 2009.

/s/ Dwight H. Williams, Jr.
United States Bankruptcy Judge

c: Briana L. Crittenden, Debtor
Michael D. Brock, Debtor's Attorney
Russell N. Parrish, Creditor's Attorney
Curtis C. Reding, Trustee